# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| FREDERICK GRAY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. CIV 16-145-RAW-SPS ) |
| PATRICIA SORRELS, et al., | ) ) |
| Defendants. | ) |

## OPINION AND ORDER

This action is before the Court on Defendants' motion to dismiss Plaintiff's amended civil rights complaint. The Court has before it for consideration Plaintiff's amended complaint (Dkt. 60), Defendants' motion (Dkt. 64), and Plaintiff's response (Dkt. 75).

Plaintiff, an inmate in the custody of the Oklahoma Department of Corrections (DOC) who is incarcerated at Davis Correctional Facility in Holdenville, Oklahoma, brings this action under the authority of 42 U.S.C. § 1983, seeking relief for alleged constitutional violations during his incarceration at Oklahoma State Penitentiary ("OSP") in McAlester, Oklahoma. The defendants are Patricia Sorrels, OSP Health Services Administrator; David Marlar, OSP Resident Physician; Buddy Honaker, DOC Medical Services Administrator; James Howard, OSP Resident Psychiatrist; Susan Shields, OSP Psychologist; Patricia Stem, DOC Eastern Regional Mental Health Coordinator; William Taylor, OSP Mental Health Unit Manager; Nancy Coppel, OSP L.P.N.; Amber Robinson, OSP L.P.N.; Alicia Scull, OSP L.P.N., and Buster Harris, OSP Correctional Officer.

**Medical Claim Concerning Plaintiff's Knees**

Plaintiff alleges that during the morning "pill pass" on June 22, 2015, he advised the attending nurse on duty that his knees were swollen and causing him severe pain. The nurse

observed Plaintiff's knees and advised him to submit a "sick-call" or Heath Services Form.

Plaintiff alleges he stated in his June 22, 2015, sick-call that "I need my knee (sic) looked at again. It (sic) is (sic) swollen and throbbing with pain" (Dkt. 60 at 3). Plaintiff asserts his knees still were swollen and very painful when he was triaged by Defendant Coppel. Coppel, however, did not provide Plaintiff with anything for his symptoms. He claims Coppel's deliberate indifference to his medical problems resulted in more pain and a lasting injury.

The pain was so "severe and unrelenting" that Plaintiff could not sleep well, and at times he could not get out of bed from his top bunk assignment. Therefore, he submitted the second of many sick-call slips on July 8, 2015, stating, "I was triaged for my swollen and painful knees on June 28th, 2015. I am still having the same issues. I need Tylonol (sic) for pain and something for the fluid on my knees" (Dkt. 60 at 3). The triage nurse observed his knees on July 8, 2015, and allegedly said, "You need an X-ray those look bad" (Dkt. 60 at 4). Plaintiff, however, received no pain relief.

On August 3, 2015, Plaintiff submitted his third sick-call after receiving no pain treatment in the first and second triages. His sick-call stated his swollen and painful knees still had not been examined. He again requested Tylenol, X-rays, and treatment for fluid on his knees. Because he allegedly was not triaged for the third sick-call, Plaintiff submitted a Request to Staff (RTS) to Defendant Patricia Sorrels, Health Services Supervisor, on August 10, 2015. The RTS stated he needed an X-ray, treatment, and pain relief. Plaintiff alleges he subsequently submitted numerous additional RTSs and grievances, but he did not receive the requested X-ray, pain relief, and other treatment or "amenity" to prevent further damage to his knees.

On July 5, 2016, Dr. Gonzago, the facility physician at Lawton Correctional Facility,

provided Plaintiff a prescription for Naproxin for pain relief. Plaintiff claims he mistakenly believed Naproxin was a "serious prescription pain medication," but he subsequently learned it was only a prescription for Advil. The medication did not relieve his pain, and the pain caused him uncontrollable gnashing of his teeth which resulted in chipped and broken teeth.

Plaintiff complains that Defendants Marlar, Robinson, Coppel, Scull, and Sorrels were responsible for the denial of pain relief for approximately 79 days until Plaintiff received the Advil. This delay also allegedly resulted in further damage to Plaintiff's left knee. When he was reevaluated on December 7, 2015, in the hypertension chronic care clinic, Defendant Dr. Marlar prescribed something "more serious" for the pain, along with a brace to allow the meniscus tendon to heal properly. Plaintiff returned to Dr. Marlar on January 8, 2016. Dr. Marler then advised Plaintiff that there was a spending freeze, and Plaintiff could not be provided with a knee brace. Plaintiff maintains the delays and denials of treatment for his knees amounted to cruel and unusual punishment under the Eighth Amendment.

Plaintiff further alleges he is a black male, and while going through the grievance process, he discovered that three of his "Caucasian counterparts" were being seen by Defendant Nurses Coppel, Robinson, and Scull. Furthermore, the "counterparts" received pain relief the first day they complained of pain. Plaintiff asserts the denial of pain relief for him violated his right of equal protection to be free from pain and suffering. Plaintiff further claims Defendants Sorrels and Honaker have shuffled and forged paperwork to take advantage of him, because he is incarcerated and unable to seek medical treatment from a provider of his choosing.

**Altercation with Cellmate and Plaintiff's Resulting Injuries**

Plaintiff resumed sharing a cell with his former cellmate Gail Daetwiler on June 13, 2014. The two men previously were separated because Daetwiler refused to take his

3

psychotropic medications in protest of Dr. Janna Morgan's not allowing them to transfer to a lower security level as she had promised. Defendants William Taylor and Patricia Stem advised Plaintiff and Daetwiler that if either of them stopped taking his medication, they immediately would be separated again.

On or around August 4-6, 2015, Dr. James Howard discontinued Daetwiler's psychotropic prescriptions, because Daetwiler had refused to meet with Dr. Howard. When Daetwiler was advised of this change on the morning of August 10, 2015, he immediately "began to throw a tantrum." Plaintiff advised the staff that if Daetwiler's psychotropic medications were not resumed, Plaintiff and Daetwiler would need to be separated for Plaintiff's safety. Plaintiff claims that while they were waiting for Daetwiler to receive his medication, Defendants Scull and Robinson said that "Defendants Scull and Stem were sending schathing (sic) e-mails to Defendant Howard as well as Defendant Shields sending e-mails to Defendant Howard also" (Dkt. 60 at 6).

On the morning of August 14, 2015, the Certified Emergency Response Team (C.E.R.T.) arrived in Plaintiff's unit for an institution-wide search of each cell for contraband. Despite not finding any contraband, the C.E.R.T. officers allegedly trashed all ten cells on the top tier, including Plaintiff and Daetwiler's cell. Plaintiff argues this damage to the cells violated Article 2 § 30 of the Oklahoma Constitution, the Fourth and Fourteenth Amendments to the United States Constitution, and the Oklahoma Department of Corrections Operations Policy OP-040110.

Daetwiler allegedly went into another "tantrum" and began to yell at the C.E.R.T. personnel and OSP Sergeant Fry, who escorted the C.E.R.T. officers. Fry allegedly told the C.E.R.T. officers that "they only trashed [Daetwiler and Plaintiff's] cell because Plaintiff is a nigger" (Dkt. 60 at 7). Plaintiff told Sgt. Fry that Daetwiler was off his medications and

4

then attempted to calm down Daetwiler.

Plaintiff began cleaning their cell, but Daetwiler told him to stop so they could show the mess to the doctor. As Plaintiff continued cleaning, Daetwiler again told him to stop and then spat in Plaintiff's face and shoved him. Plaintiff informed Officer Powell that "he had been accosted and assaulted" (Dkt. 60 at 8). The officer said she would advise Sgt. Brian Holden. Powell returned later and said an inmate had hanged himself, and they would attend to Plaintiff's problem when they could. Plaintiff informed Powell that he no longer felt safe.

That afternoon Psych-Clinician Steve Long came by Plaintiff and Daetwiler's cell, and Plaintiff reported that Daetwiler had attacked him. Daetwiler denied the attack, but Long stated he would have the two men separated. After Long left, Daetwiler attacked Plaintiff from behind, while Plaintiff was waiting at the door to move out of the cell. Daetwiler repeated his attacks approximately four more times.

Daetwiler punched the back of Plaintiff's neck, and Plaintiff turned around to get Daetwiler off him. As Plaintiff packed his property, Daetwiler continued to punch him in the mouth, pushing Plaintiff's tooth into his lip and leaving Plaintiff dazed and bleeding. While Plaintiff sat on the toilet near the front of the cell, Daetwiler broke the loaner radio that was provided to Plaintiff as part of his therapy. Plaintiff was looking out the window in his cell door when Daetwiler struck him from behind again with part of the radio. Plaintiff maintains that after this altercation, he and Daetwiler were separated because of Daetwiler's attack, not because of a verbal dispute.

Plaintiff further alleges he suffered a whiplash neck injury caused by Daetwiler's punches to the back of his neck. He claims he submitted three proper sick-calls on August 15, 2015; August 22, 2015; and August 29, 2015, but he received no treatment. His injury was not discovered until his neck was X-rayed on November 17, 2015. On December 7,

2015, Plaintiff saw Dr. Marlar who diagnosed "a sprained neck 'WHIPLASH'" (Dkt. 60 at 9). Plaintiff attributes the delay in medical care to Defendant Buster Harris' failure to allow Correctional Officer Brian Holder to take Plaintiff to the OSP Medical Department as part of a cell altercation protocol.

**Standard of Review**

Defendants have filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). In assessing a motion to dismiss, the Court must accept the factual allegations as true and consider them in the light most favorable to the plaintiff. *Tomlinson v. El Paso Corp.*, 653 F.3d 1281, 1285-86 (10th Cir. 2011) (citing *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)), *cert. denied*, 565 U.S. 1201 (2012). A request for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) requires the Court to determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Court is required to exercise a liberal interpretation of a plaintiff's pleadings, *Haines v. Kerner*, 404 U.S. 519 (1972), it need not assume the role of advocate for Plaintiff, and he must present more than conclusory allegations to survive a motion to dismiss for failure to state a claim, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Id.* (citing cases). "[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Id*.

6

**Eleventh Amendment Immunity**

Defendants allege they are immune from suit for money damages in their official capacities as employees of the Oklahoma Department of Corrections. The official capacity claims against the defendants are actually claims against the State of Oklahoma. "[T]he Eleventh Amendment bars federal court jurisdiction over a state agency for both money damages and injunctive relief, or a state official acting in her official capacity in a suit for damages." *Ellis v. Univ. of Kansas Med. Ctr.*, 163 F .3d 1186, 1196 (10th Cir. 1998). Absent a waiver by the state, or a valid congressional override, the amendment bars a damages action against a state in federal court. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

The Court, therefore, grants Defendants' motion to dismiss all official-capacity claims against the individual defendants. Because the Eleventh Amendment involves sovereign immunity, the official-capacity claims against the defendants are dismissed "without prejudice" rather than "with prejudice." *Rural Water Sewer & Solid Waste Mgmt., Dist. No. 1, Logan Cty., Okla. v. Guthrie*, 654 F.3d 1058, 1069 n.9 (10th Cir. 2011).

**Personal Participation**

Defendants further allege Plaintiff has failed to affirmatively link them to an alleged constitutional violation. "Personal participation is an essential allegation in a § 1983 claim." *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (citations omitted). *See also Mee v. Ortega*, 967 F.2d 423, 430-31 (10th Cir. 1992). Plaintiff must show that a defendant personally participated in the alleged civil rights violation. *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). Furthermore, "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by the plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir.

7

2009) (citations omitted).

Supervisory status is not sufficient to support liability under § 1983. *Id*. *See also Polk County v. Dodson*, 454 U.S. 312, 325 (1981).

> Liability of a supervisor under § 1983 must be predicated on the supervisor's deliberate indifference, rather than mere negligence. *Woodward v. City of Worland*, 977 F.2d 1392, 1399 (10th Cir.1992). "[S]upervisory liability requires 'allegations of personal direction or of actual knowledge and acquiescence.'" *Id*. at 1400 (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990)).

*Langley v. Adams County*, 987 F.2d 1473, 1481 (10th Cir. 1983).

The Court finds Plaintiff has not met his burden of demonstrating personal participation by the defendants. Reciting the elements of a claim is not enough to state a claim for relief. *Twombly*, 550 U.S. at 555.

The Court further finds Plaintiff has named no individual who treated his medical needs differently from the medical needs of Caucasian prisoners. Plaintiff's sole allegation against Defendants Dr. Howard, the OSP psychiatrist, is that Howard discontinued Inmate Daetwiler's psychotropic medication. There are no allegations that Dr. Howard had any interactions with Plaintiff or made any decisions about Plaintiff's care. Similarly, Plaintiff alleges that Defendants Taylor and Stem advised only of the housing consequences for Plaintiff and Daetwiler if either prisoner failed to take his medication. Furthermore, the allegations against Defendant Shields are only conclusory statements that she failed to protect him and sent emails regarding Inmate Daetwiler's medication. Finally, Plaintiff's only allegations against Defendants Honaker and Sorrels are that they failed to respond to Requests to Staff or grievances. None of the allegations against these defendants support Plaintiff's claims that the defendants participated in any violations of the Eighth Amendment or the Equal Protection Clause.

As for the remaining defendants, Plaintiff claims L.P.N.s Coppel, Robinson, and Scull

denied him pain relief or delayed medical care. Defendant Scull also allegedly said she would send an email to one of the facility physicians about Inmate Daetwiler's medication. Plaintiff claims Defendant Dr. Marlar denied him pain relief and delayed medical care, in addition to diagnosing Plaintiff's neck injury and ordering treatment for his knee. Although the allegations against these defendants are more specific, the claims do not connect these defendants with any constitutional violations.

To establish an Eighth Amendment claim for deliberate indifference to serious medical needs or for failure to protect, Plaintiff must show the defendants were aware of a risk and disregarded the risk. *Farmer v. Brennan*, 511 U.S. 825 (1993). Plaintiff's complaint, however, fails to allege that any of the individual defendants were aware of a serious risk or a potential risk to Plaintiff.

Instead, Plaintiff is claiming the defendants, to varying degrees, were responsible for care, safety, and security. Because certain medications were not given or taken and an altercation occurred, the defendants must have been deliberately indifferent. This, however, is insufficient to establish an affirmative link between the defendants' actions or inaction and a constitutional violation.

**Failure to Protect**

The Court further finds Plaintiff has not stated a claim that the defendants acted with deliberate indifference or failed to protect him from harm in violation of the Eighth Amendment. Deliberate indifference for Eighth Amendment purposes requires the prison employees and officials to have known of a substantial risk to heath or safety and then to have disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825 (1994). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to

9

inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. The plaintiff also must show that the defendants consciously disregarded an obvious danger. *See Grimsley v. MacKay*, 93 F.3d 676, 681 (10th Cir. 1996) (*e.g.*, "where prison officials disregard repeated warnings of danger to a particular prisoner and continually refuse to make the situation safer."). Plaintiff cannot establish that Defendants drew the required inference that he would be subjected to imminent and substantial harm. Therefore, he has failed to demonstrate that Defendants were deliberately indifferent to his Eighth Amendment rights.

**Medical Care**

The Court further finds Plaintiff has failed to show Defendants violated his Eighth Amendment rights by the delay or denial of medical care. Plaintiff alleges that on June 22, 2015, he advised the attending nurse that his swollen knees were causing him severe pain. After Plaintiff submitted a sick call slips on June 28, 2015, and July 8, 2015, Defendant Coppel saw him for the problem, but allegedly did not provide him with treatment to relieve the swelling or reduce his pain. Plaintiff submitted a Request to Staff to Defendant Sorrels on August 10, 2015, but claims he did not receive the requested X-ray or medication for his symptoms.

Plaintiff admits he was seen by medical staff, but claims he received no treatment for his symptoms until September 7, 2015, after his condition had worsened. He also admits he received a neck X-ray on November 17, 2015. On December 7, 2015, Dr. Marlar diagnosed the injury and said he would prescribe a stronger pain medication and a brace. On January 8, 2016, however, Dr. Marlar advised Plaintiff that a spending freeze precluded providing the brace. (Dkt. 60 at 9).

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court addressed the Eighth Amendment prohibition against cruel and unusual punishment in the context of medical attention:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under §1983.

*Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (citations and footnotes omitted).

With this standard in mind the Court is of the view that the acts complained of do not show deliberate indifference to Plaintiff's medical needs as alleged. It is clear from the record that medical care was provided. Where there is such evidence of a "series of sick calls, examinations, diagnoses, and medication . . . it cannot be said there was a 'deliberate indifference' to the prisoner's complaints." *Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976). To the extent Plaintiff is complaining about the inadequacy of medical care provided, the Court finds Plaintiff is merely asserting a difference of opinion as to the kind and quality of medical treatment necessary under the circumstances. It is well settled that this type of disagreement fails to give rise to a cause of action under § 1983. *See McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977), *cert. denied*, 435 U.S. 917 (1978), and cases cited therein.

To the extent Plaintiff is complaining of the delay in his treatment, "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in substantial harm." *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (quoting *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)). The allegations in Plaintiff's complaint show that he received medical care, even if it was not the care he requested. The Court finds he has not shown a violation of the Eighth Amendment with

respect to his medical treatment.

**Injunctive Relief**

Finally, Plaintiff has requested an injunction ordering Defendants Patricia Sorrels and Buddy Honaker to "squarely address" Plaintiff's grievances and grievance appeals (Dkt. 60 at 14). To be entitled to injunctive relief the movant must establish a violation of his constitutional rights. *Rizzo v. Goode*, 423 U.S. 362, 377 (1976). Plaintiff, however, has failed to plead any facts to sustain a finding of an ongoing constitutional violation by Defendant Honaker or Defendant Sorrels. Instead, the amended complaint alleges these defendants refused to respond to his grievance documents. There are not sufficient facts to support a claim for an ongoing constitutional violation.

A district court may grant a preliminary injunction if the party seeking it shows that "four equitable factors weigh in favor of the injunction." *Westar Energy v. Lake*, 552 F.3d 1215, 1224 (10th Cir. 2009). The factors are (1) a substantial likelihood of prevailing on the merits; (2) irreparable harm in the absence of the injunction; (3) proof that the threatened harm outweighs any damage the injunction may cause to the party opposing it; and (4) that the injunction, if issued, will not be adverse to the public interest. *Id*.

The Court finds Plaintiff has failed to demonstrate he is unequivocally entitled to a temporary or preliminary injunction requiring either of these defendants to act. He does not have a strong likelihood of success on the merits of this case, and he cannot show these defendants are not entitled to immunity. Furthermore, Plaintiff has not shown he is in danger of irreparable injury if the injunction is denied. Based on these considerations, an injunction cannot be granted.

**ACCORDINGLY,** Defendants' motion to dismiss (Dkt. 64) is GRANTED for Plaintiff's failure to state a claim under Fed. R. Civ. P. 12(b)(6). Defendants in their official capacities are DISMISSED WITHOUT PREJUDICE, Defendants in their individual capacities are DISMISSED WITH PREJUDICE, and Plaintiff's request for injunctive relief is DENIED. This dismissal shall count as a "prior occasion" or "strike," pursuant to 28 U.S.C. § 1915(g).

**IT IS SO ORDERED** this 27th day of September 2017.

Ronald A. White
United States District Judge
Eastern District of Oklahoma