# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **FREDERICK GRAY,** | ) |
| Plaintiff, | ) ) ) |
| v. | )  No. CIV 16-145-RAW-SPS |
| **PATRICIA SORRELS, et al.,** | ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff, an inmate in the custody of the Oklahoma Department of Corrections (DOC) who is incarcerated at Joseph Harp Correctional Center in Lexington, Oklahoma, brought this action under the authority of 42 U.S.C. § 1983, seeking relief for alleged constitutional violations during his incarceration at Oklahoma State Penitentiary (OSP) in McAlester, Oklahoma. The remaining defendants are David Marlar, OSP Resident Physician, and three OSP Nurses: Nancy Coppel, Amber Robinson, and Alicia Scull.

Plaintiff appealed the Opinion and Order dismissing this action to the Tenth Circuit Court of Appeals. The appellate court affirmed in part, and reversed and remanded for further proceedings concerning:

(1) the claim against Ms. Coppel alleging she denied Mr. Gray medical treatment;

(2) the claim against Dr. Marlar concerning Mr. Gray's neck injury, and

(3) the equal protection claim against Ms. Coppel, Ms. Robinson, and Ms. Scull.

*Gray v. Sorrels*, No. 17-7063, slip op. at 18 (10th Cir. Aug. 1, 2018) (Dkt. 86).

Defendants have filed a special report at the direction of the Court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (Dkt. 101) and a motion for summary judgment (Dkt. 102). Plaintiff has filed a response to the motion (Dkt. 104), and Defendants

also have filed a reply (Dkt. 105).

**Denial of Medical Treatment (Defendant Coppel)**

The Tenth Circuit described Plaintiff's remaining claims as follows:

> Ms. Coppel was a licensed practical nurse at the prison. The amended complaint alleged that Mr. Gray's knees were swollen and severely painful when Ms. Coppel examined him, and that she would not provide him with anything for the swelling or pain. Mr. Gray's affidavit further alleged that Ms. Coppel saw him in late June, 2015, but Dr. Marlar did not see him until September 2, 2015. In the interim, Ms. Coppel did not give him any pain medication and instead told him that he would have to wait for Dr. Marlar. Mr. Gray alleged that he had been in severe pain while awaiting treatment.
>
> We conclude that Mr. Gray stated a plausible claim of the subjective component of deliberate indifference by alleging that Ms. Coppel knew of his swollen and painful knees and determined that they required treatment, yet failed to provide any pain relief for over two months. This sufficiently alleged that Ms. Coppel was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that she must also have drawn the inference.
>
> We further conclude that Mr. Gray's claim that his knees were severely swollen and caused him severe pain for over two months stated a plausible claim that the delay resulted in substantial harm, thus satisfying the objective component. *See Al-Turki*, 762 F.3d at 1193 (stating the objective element is established if the pain experienced during the delay in obtaining medical treatment is substantial). . . .

*Gray*, No. 17-7063, slip op. at 8.

**Medical Treatment for Neck Injury (Defendant Marlar)**

> Dr. Marlar was the prison's resident physician. . . . [T]he amended complaint asserted that Mr. Gray suffered a whiplash neck injury on August 14, 2015, when his cellmate battered him. In his affidavit, Mr. Gray alleged that despite Dr. Marlar's statement in early September 2015 that he would order an x-ray of Mr. Gray's neck, the x-ray was not taken until November 19, 2015, more than three months after the injury and almost two and one-half months after Dr. Marlar said he would order it. Mr. Gray's affidavit further alleged that Dr. Marlar said he would order something for his neck pain, as well as a muscle relaxer, but he did not receive anything for his neck pain until January 8, 2016, and the muscle relaxer was never prescribed, so his "neck is stiff and pops when moved." R. at 169.
>
> We conclude that Mr. Gray has plausibly alleged a deliberate indifference claim against Dr. Marlar based on his neck injury. For the

subjective component, Mr. Gray alleged that Dr. Marlar knew he had sustained a severe neck injury and ordered an x-ray, but failed to obtain the x-ray for two and one-half months. In addition, Mr. Gray alleged he received no pain medication for his neck until January 8, 2016, and no muscle relaxer. Mr. Gray also satisfied the objective component by alleging that he had severe neck pain from August 14, 2015, until January 8, 2016, and that his neck continued to be stiff and pop when moved.

*Gray*, slip op. at 10-11 (footnote omitted).

**Equal Protection (Defendants Coppel, Robinson, and Scull)**

Mr. Gray alleged that Defendants Coppel, Robinson, and Scull violated the Equal Protection Clause when they provided pain relievers to white prisoners as soon as they complained of pain, but did not provide pain medication to him. To prove a constitutional violation, Mr. Gray must allege that he was treated differently from similarly situated individuals. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). In addition, "[p]roof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). "It is not necessary to demonstrate that the challenged action was taken solely for discriminatory purposes; it is necessary only to prove that a discriminatory purpose was a motivating factor." *Watson v. City of Kansas City*, 857 F.2d 690, 694 (10th Cir. 1988).

. . . Mr. Gray's allegation that Defendants Coppel, Robinson, and Scull provided pain medication to white prisoners suffering from pain while denying pain medication to him, an African American prisoner suffering from pain, is sufficient to state a claim that he was treated differently from similarly situated individuals. Further, the allegations that these Defendants treated whites but did not treat African Americans is sufficient to draw the reasonable inference of discriminatory intent. We therefore conclude that Mr. Gray stated an equal-protection violation . . . .

*Gray*, slip op. at 15-16.

**Standard of Review**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* In

3

making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. A party opposing a motion for summary judgment, however, may not simply allege there are disputed issues of fact; rather, the party must support its assertions by citing to the record or by showing the moving party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c). Thus, the inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**Exhaustion of Administrative Remedies**

Defendants have filed a motion to dismiss, alleging among other things, that Plaintiff has failed to exhaust his administrative remedies for the remanded claims. (Dkt. 102).[1] "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted).

---

[1] Defendant did not raise an exhaustion defense in his earlier motion to dismiss (Dkt. 43). "The statutory exhaustion requirement of § 1997e(a) is mandatory, and the district court [is] not authorized to dispense with it." *Beaudry v. Corr. Corp. of Am.*, 331 F.3d 1164, 1167 n.5 (10th Cir. 2003) (per curiam) (citations omitted). "[A] defendant raising the issue of exhaustion pursuant to 42 U.S.C. § 1997e(a) is not required to do so in his answer or even in a motion filed by the dispositive motions deadline." *Carbajal v. Keefer*, 2016 WL 1663383, at *3 (D. Colo. 2016) (unpublished opinion) (citing *Beaudry*, 331 F.3d at 1167 n.5).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Courts will excuse failure to exhaust only if prison officials impede the inmate's attempts. *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010). The burden, however, is on the inmate to demonstrate that the alleged impediment to exhaustion existed and did in fact discourage or stop him from using the prison grievance procedure for the unexhausted claims. *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011).

According to the DOC Offender Grievance Process, OP-090124, an inmate first must attempt to resolve his complaint informally by communicating with staff within three days of the incident. If that is unsuccessful, he may submit a Request to Staff (RTS) within seven calendar days of the incident, alleging only one issue per form. If the offender does not receive a response to his RTS within 30 calendar days of submission, he may submit a grievance to the Review Authority (warden's office), asserting only the issue of the lack of response to the RTS. If the complaint is not resolved after the response to the RTS, the offender then may file a grievance. If the grievance is medical, it is submitted to the correctional health services administrator for resolution. If the grievance also does not resolve the issue, the inmate may appeal to the Administrative Review Authority (ARA) or the Health Services Administrative Review Authority. The administrative process is exhausted only after all of these steps have been taken. (Dkt. 101-2).

The record shows that Plaintiff submitted five grievances and one appeal during the time relevant to this action:

(1) <u>Grievance 2015-34</u>: On September 25, 2015, Plaintiff submitted a grievance seeking a response to his RTS that was submitted on August 10, 2015. (Dkt. 1-1 at 15). The grievance was returned unanswered for failure to attach the RTS. *Id*. at 14. The referenced

5

RTS, dated August 10, 2015, sought medication, an x-ray, and other treatment for his knees, and it was answered on August 19, 2015. (Dkt. 101-3 at 2). Therefore, Plaintiff's grievance was submitted after the relief requested in the RTS had been granted. Defendants note that Grievance 2015-34 was improperly addressed to unit staff, but it sought an answer to an RTS addressed to health services staff. There is no record of an appeal related to this grievance. (Dkt. 102 at 13).

(2) <u>Grievance 2015-35</u>: On August 10, 2015, Plaintiff submitted an RTS requesting x-rays and medication for the pain and swelling in his knees (Dkt. 101-3 at 2).[2] The response, dated August 19, 2015, stated: "You were seen on 6/28, 7/18 and you had x-rays on 8/17/15. If the Dr. or nurse has not told you the results--they will." *Id.*

Plaintiff's Grievance No. 2015-35, received on September 28, 2015, requested a refill of his prescription for Naprosyn and therapeutic shoes for his knee pain, along with compensation. *Id*. at 4. A copy of the response could not be located, but review of the grievance and the letter from the Medical ARA indicates the grievance was returned unanswered, because Plaintiff had asked for compensation and had used an obsolete form. *Id*. at 7. There is no record of Plaintiff's having submitted an appeal. (Dkt. 102 at 13).

(3) <u>Grievance No. 2015-40</u>: On October 6, 2015, Plaintiff filed a grievance concerning an alleged assault by another prisoner, seeking compensation for his pain and a policy change regarding psychiatric medications. (Dkt. 101-4 at 2-3). Plaintiff then submitted a grievance to the Medical ARA seeking a response to the original grievance. *Id.* at 4. The ARA responded on December 7, 2015, directing the October 6 grievance be returned unanswered, because the underlying RTS was on an obsolete form, and Plaintiff was seeking compensation. *Id.* at 6-7. Plaintiff timely appealed on December 21, 2015. *Id.* at

---

[2] This was the same RTS at issue in Grievance No. 2015-34,

8-9. The appeal was returned unanswered because Plaintiff continued to seek compensation and use obsolete forms. *Id*. at 10.

(4) <u>Sensitive Grievance</u>: On October 21, 2015, Plaintiff submitted a "sensitive" grievance to Dr. Sutmiller. (Dkt. 101-5 at 2-3). The sensitive grievance sought a response to Grievance 2015-35 and an end to perceived retaliation for his grievance activity. *Id*. at 2. The grievance was returned unanswered, because it did not qualify as sensitive, and it improperly added a complaint to a grievance that was submitted to remedy a non-response. *Id.* at 4.

(5) <u>Grievance 2016-03</u>: On January 22, 2016, Plaintiff submitted to Patricia Sorrels a grievance seeking an MRI for his knees, possible surgery or physical therapy, and a knee sleeve for a torn ligament in his left knee. The grievance was returned unanswered on January 25, 2016, because Plaintiff had attached inappropriate attachments, instead of attaching the relevant RTS. Plaintiff did not appeal this determination. (Dkts. 102 at 14, 102-1).

Defendants maintain that Plaintiff never correctly asserted his claims in accordance with the grievance procedure. Further, he made no attempts to grieve any discrimination allegations.

Plaintiff alleges in his response to the motion for summary judgment that "the defendants and their agents met minds to thwart, hinder, prevent, and frustrate [him] from availing himself in the Oklahoma Department of Corrections official grievance procedure by returning [his] timely and properly submitted grievances and/or not responding to all for frivolous, trifeling [sic], de minumus reasons, beyond policy." He asserts he made every attempt to exhaust his administrative remedies for all claims prior to bringing suit, but his grievances were returned unanswered because he could not be awarded monetary relief. He

7

thus contends he had no remedy. Plaintiff further complains his submitted grievances were returned under the vague category of "other" on the form when the grievance policy does not require the use of a revised form. He also alleges he wrongfully was categorized as being on grievance restriction, which affected his ability to file proper grievances. (Dkt. 104, 28-31). Plaintiff does not allege he attempted to file appeals for Grievance Nos. 2015-34, 2015-35, 2016-03 or the "sensitive" grievance.

Defendants maintain in their reply that Plaintiff has not properly exhausted any of the claims remaining in this lawsuit. (Dkt. 105). Plaintiff appealed only one grievance, No. 2015-40, however, the appeal was procedurally deficient and the ARA denied relief.

As set forth above, Grievance No. 2015-40 concerned an alleged assault of Plaintiff by his former cellmate. Plaintiff sought a policy change regarding psychiatric medications and compensation for his neck pain. (Dkt. 101-4 at 2-3). He has not, however, raised a claim in this action regarding the discontinuation of his psychiatric medication. Therefore, even if he exhausted this claim, it would not constitute exhaustion with respect to his present claims. As for his request for compensation for his neck pain caused by the altercation, he raised no constitutional claim in his grievance with regard to this issue. He did not claim the defendants failed to protect him or denied him treatment. He instead complained that when his former cellmate did not get his scheduled medication, the cellmate assaulted him.

**Conclusion**

After careful consideration of the pleadings and other submitted materials in this case, the Court is of the view that there are no genuine issues of material fact concerning whether Plaintiff's claims are unexhausted. Therefore, summary judgment must be GRANTED.

**ACCORDINGLY,** Defendant's motion for summary judgment (Dkt. 102) is GRANTED, and this case is DISMISSED in its entirety.

**IT IS SO ORDERED** this 30th day of September 2019.

Ronald A. White
United States District Judge
Eastern District of Oklahoma